IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MESUE JACKSON, )
)
Plaintiff, )
)
V. ) No. 10 cv 1988
) Honorable Judge Samuel Der- Yeghiayan
CHICAGO-KENT COLLEGE OF LAW, )
)
Defendant, )

**PLAINTIFF'S RESPONSE TO DEFENDANT
CHICAGO-KENT COLLEGE OF LAW'S MOTION TO DISMISS**

NOW COMES the plaintiff, Mesue Jackson, *pro se*, and respectfully asks the Honorable Judge Samuel Der- Yeghiayan to deny the defendant Chicago-Kent College of Law's Motion to Dismiss. I, the plaintiff, filed this civil case against the defendant for what I believe was an injustice toward me in trying to gain admissions to Chicago-Kent College of Law for the 2008 entering class. I believe I have enough evidence to prove that I was a qualified individual for admissions to Chicago-Kent College of Law, and feel that I was wrongfully denied accommodations, which was a reasonable modification (that the defendant makes on a regular basis according to their application instructions) for two admissions criteria (work history and low LSAT score) that was affected as a result of extenuating circumstances associated with becoming physically disabled. And, denied me admissions and deemed me as being "unqualified" for admissions based upon the discriminatory acts that I filed in the initial complaint, and are stipulated again below.

## WHY I CLAIM DISCRIMINATION AGAINST CHICAGO-KENT COLLEGE OF LAW

I claim disability discrimination because:

1. I was wrongfully denied admissions to the defendant's J.D. program because I am a physically disabled person as set forth by the standards of the ADA, who was wrongfully denied admissions and was qualified for admissions, regardless of whether the defendant provided my requested accommodations for a reasonable modification or not.

2. I identified myself as being a physically disabled person over 3 times in the admissions material that I submitted to the defendant and through verbal correspondence with the admissions personnel, and they intentionally refused to acknowledge me as a disabled student, provide accommodations, nor admit me as a qualified candidate to their J.D. programs, in which I believe was as a result of being a physically disabled person. And, these are the areas that the defendant was informed of my status as a physically disabled person prior to being wrongfully denied admissions to their school:

    i. In my personal statement

    ii. In my letter of explanation statement.

    iii. When I submitted my income statement from Social Security Disability when I asked them to waive the application fee.

    iv. During telephone conversations with admissions director before being denied admissions.

    v. Other professionals from two different professional organizations for the disabled, who informed them prior to denying me admissions to their school.

3. My requested accommodation was in the form of asking for a reasonable modification in two general areas of the admissions guidelines (gap in my work history, and low LSAT score) because they were areas that was impacted or affected as a result of becoming or being physically disabled. Areas, which the defendant stipulated in their application instruction guidelines that they can take into consideration (make alterations) when deciding admissions, and is listed in the application instruction guidelines for prospective students to submit an "additional statement" or "hardship" statement surrounding any extenuating circumstance that may have impacted or affected any area of the admissions requirements. However, regardless of whether the defendant provided these accommodations, or not, I was an otherwise "qualified" disabled person for admissions to their J.D. program because:

    i. Having a work history is not a requirement for admissions, and the defendant's state on their website under "Application Requirements" that "There is no required minimum LSAT score or undergraduate GPA in order to apply for admission" (http://ask.kentlaw.edu/index.jsp). Yet, the defendant contradicts them self when they told the Office of Civil Rights (OCR) investigators (2008) that:

1. Complainant's LSAT score was a major factor in their decision to deny her admission (OCR findings, p. 3).

2. They never admitted applicants with LSAT scores as low as those earned by the complainant (OCR findings, p. 3). My response: cut-off score; in which this is prohibited by the ABA.

3. They [defendant] rejected the complainant's application because she did not meet their standards for admissions (OCR findings, p. 5).

4. Complainant neither made a request to have a disability taken into account nor provided information as to the reason it should be considered in the admissions decision (OCR Findings, p. 2). My response: what is an "additional statement" or a "letter of explanation" if I did not provide information as to the reason it should be considered? Therefore, which lie are the defendants going to use next.

5. Complainant was denied admissions because her application was not considered competitive (OCR Findings, p. 3). I hope their definition of "competitive" does not mean a high LSAT score, because it is not a requirement for admissions. And, besides I was qualified in all other areas of the admissions requirements. Therefore, that would mean that they are going against the ABA's rules, which states not to make decisions solely based upon the LSAT score. And, they are wrongfully utilizing the LSAT score to prevent people from various protected classes from entering their J.D. law program.

    ii. The ABA states that most students who enter in law school have little or "no" work history prior to attending law school. And, despite the gap in my work history due to becoming physically disabled, I have worked since I was fifteen years old, and was on my primary job of 8 or 9 years prior to becoming permanently physically disabled on a second job, or applying to

    the defendant's law school. Therefore, I was qualified under the "work history" standards with or without the requested accommodations.

    iii. The ABA warned the defendant (a) not to use the LSAT score as a way to deem a qualified person for admissions, as being an "unqualified" person for admissions; especially, minorities or persons from underserved populations who have been known to have been discriminated against in the past, in which African Americans does have a history of being discriminated against in the past; (b) not to use the LSAT score as a sole predictor for admissions, and to take the person's GPA in consideration with a low LSAT score because the LSAT score is not an effective predictor of a person's ability to attend law school; and, (c) to avoid use of cut-off scores; because the LSAT score is known to wrongfully deny minorities (African Americans) to gain admissions into law school. And, despite the rules and regulations set forth by the ABA which set guidelines for the admissions committee members to follow when deciding admissions for prospective students, the defendant did not apply or follow those standards set forth by the ABA, discredited my GPA from my undergraduate institution, and applied a cut-off score as a basis to deny me an otherwise "qualified" person for admissions to their J.D. program. Therefore, I was qualified whether or not the defendant provided accommodations in this area or not.

4.     When my requests for a reasonable modification in those two areas (gap in work history, and extenuating circumstances that led to a low LSAT score) were intentionally ignored and not honored, and the defendant got caught in a lie to the Office of Civil Rights investigators, in which the OCR investigators later on overturned their initial ruling in this area (response after 1st appeal) when the defendant told them that they applied normal admissions standards because, "Complainant neither made a request to have a disability taken into account nor provided information as to the reason it should be considered in the admissions decision" (OCR Findings, p. 2). My response: What was the "additional statement" or "letter of Explanation" submitted for? If I did not provide information as to the reason it should be considered in the admissions decision.

5.     The defendant's acclaimed diversification standards they advertise and supposedly utilize in the admissions process to promote and admit a diversified pool of candidates into their J.D. program represents an unfair percentage (minorities and members of underserved populations) to physically disabled individuals, as the percentage attending is very low. And, as a qualified physically disabled person for admissions, this very small percentage of disabled students (if any at all) clearly does not represent the defendant's acclaimed diversification policy for admitting qualified disabled candidates, which clearly presents an unfair advantage for qualified disabled students. Therefore, I was

wrongfully denied admissions due to being discriminated because I am physically disabled.

6. The defendant does not have a rankings area for the percentage of disabled students admitted to their J.D. Program, at least they did not present an area for the amount of disabled students admitted to their school in 2008 or prior to having them investigated for disability discrimination in 2008.

7. The undergraduate school (Robert Morris College) I graduated from happens to be the biggest supporter of students from underserved populations. Therefore, the reputation and academic rigor of my undergraduate school (RMU) who happens to be accredited from the same accrediting agency as the defendant, was wrongfully discredited, defamed, and used as a bias admissions standard to disqualified me, an "otherwise qualified" disabled person for admissions because I am physically disabled as set forth by guidelines of the ADA, and because my undergraduate school RMU is the biggest supporter of individuals from underserved populations (disabled persons).

8. The defendant told the OCR investigators at the Department of Education, during their investigation that the biggest reason I was denied admissions is because I was not considered "competitive." In my opinion, this is a direct statement that explicitly states the defendant's disregard toward disabled individuals trying to enter the defendants J.D. program, and a direct statement as to why I was denied admissions for being a permanently physically disabled person with limitations. Question: How does the defendant equate or measure a fair representation of a student's ability to be competitive between "non-disabled," and "physically disabled" individuals? Additionally, how can the defendant's say that I was not considered competitive when:

   a. I applied several times. I worked since I was 15, up until I became permanently physically disabled from an accident, in which I held my primary job of 8-9 years until I became permanently physically disabled, despite the ABA stating that most law students start law school with little or no work experience prior to starting law school.

   b. I worked a job (school bus driver) that was very much "relevant" job that helped ensure our future (school kids of all ages) got to and from school to get their education so that they can become productive and successful individuals in our society.

   c. I maintained an A and B average throughout predominantly most of my whole educational experience in life, believe me I earned every bit of my high GPA (3.8 GPA for undergrads, and 4.0 GPA for graduate.

    d. I worked hard to overcome bedridden status and to be able to get around despite my physical limitations.

    e. I worked hard to better myself as a young permanently physically disabled person, by putting myself through school with nothing, while experiencing extenuating circumstances, receiving constant medical treatment, enduring financial hardship while maintaining a high GPA, while volunteering in my community and helping to support others who were trying to make a difference in our community and society as a whole, and finally.

    f. I continued to apply to the defendant's law school, despite being forced to pursue other graduate degree programs that I never intended to pursue, as a result of the defendant wrongfully denying me, an "otherwise" qualified disabled person for admissions. Therefore, if I was not competitive and "bloodthirsty" in gaining admissions to the defendants school for a legal education, then maybe the defendant's definition of "competitive" means "high LSAT score," which the ABA warns them "not" to base their sole admissions decision upon; which wrongfully excludes me from enjoying my right to attend the defendant's J.D. Law program, as a result of them using admission standards that are not consistent with what is stipulated on their website for prospective students to gain admissions.

9. For not admitting me under the "rolling or scaling basis" program, which allows the defendant to choose around 30 prospective students who "may" (extenuating circumstance) fall short in the admissions requirements, and they offer them an opportunity to attend a summer course to prove they can make it in law school. And, if the candidates do well in the summer course, then they are guaranteed a seat in that law school for the upcoming entering class for that year. Now tell me why I was not chosen for this program even though I asked for the program by name. And, tell me why I was not chosen as a candidate for this program by the defendant, knowing that the percentage of disabled attending their law school was very low. Notice Your Honor that I never stated that I fell short of meeting the admissions standards. And, please notice that the defendant stated that I was not "competitive" as their main reason for denying me admissions. However, please notice that they did not offer me a chance to prove myself in any of the three summer courses they provided, because they did not like me based upon my protective classes, and not based on my true credentials. The truth is, the defendant knew that I was qualified and would pass that summer course program, the reason why they never offered me an opportunity to prove that I was qualified to attend law school, so they intentionally, denied my application to their program three consecutive times.

10. If the defendant's bias admissions standards given to OCR investigators are acceptable admissions standards and reasons for the defendant to disqualified me and other "qualified" prospective students for admissions to the J.D law program, then the defendant is guilty of promoting false admission requirements for prospective students who are taking steps to prepare to enter the defendant's law school in the future. And, guilty of falsely misleading me, as a first time college graduate in my family, and as an individual from an underserved population, into taking steps that they list as standards for admissions to law school that conflicts with the admissions standards they apply behind closed doors. Therefore, my student loans should be covered by the defendant for falsely misleading me into pursuing a legal education that was never going to happen because:

   a. I was disabled

   b. their acclaimed admissions requirements on their website, and application instructions is not consistent with the standards they apply in the admissions process behind closed doors, nor were these admissions standards given to the OCR investigators as adequate admissions standards, the same as the admissions requirements they listed on their website or application instructions for trying to gain admissions.

   c. because the defendant and the ABA originally stated that one of the standards for gaining admissions to the law school is to obtain a Bachelor's degree from an accredited university in accordance with the Department of Education, yet my undergrad and graduate schools was wrongfully used as admissions criterion that denied me entry in to the defendant's law school. Had I known that RMC was not an acceptable school to gain admissions by the defendant, I would not have attended my undergrad school, despite being proud to have attended and received a very academically rigorous education that was rewarding, because I would have known beforehand, that it would have prevented me from gaining admissions to the defendant's law school.

   d. If the admissions standards that I pursued to get into the Defendant's law school was not the same standards utilized in the actual admissions process held by the Defendant's behind closed doors (standards they gave OCR investigators that did not match the standards they advertise to individuals taking steps to get into law school), than I was wrongfully denied admissions based upon admissions standards not made public to prospective students trying to get into law school, then damages should be paid to me for:

      i. Wasting my time pursuing a false education that was never going to happen because they did not like me as a person, and not based upon my true credentials.

    ii. Defendant should reimburse me for the student loans I took out to pursue their false advertisement for gaining admissions to their law school, and for pursuing an education that would not have helped me gain entry despite their advertised admissions requirement that the students BA should come from an accredited school.

    iii. For intentionally, taking steps (denying me my right to pursue a legal education) that they knew would cause me harm, as a physically disabled student with various physical limitations, by intentionally preventing me from enjoying my right to obtain a legal education, knowing that the "disabled" are an "underserved" population.

## I claim Race Discrimination because:

1. I was wrongfully denied admissions to the defendant's law school because I am African American, and was otherwise "qualified" for admissions.

2. If not because I am African American, because my undergraduate school, Robert Morris University is one of the biggest supporters of African Americans, minorities and people from underserved populations. And, my undergraduate school RMU that I graduated from was wrongfully used by the defendant as an admissions credential that wrongfully disqualified me for admissions to their J.D. law program.

3. Because of the small percentage of African Americans attending the defendant's law school, and their false acclaims surrounding accepting a diversified pool of candidates from various races and backgrounds to their J.D. program.

4. The defendant's statement to OCR investigators at the Department of Education, for reasons why I was denied admissions, were bias reasons and admissions criterion that was used to wrongfully deny me, an otherwise qualified African American individual for admissions, had nothing to do with obtaining a legal education. And, these are the bias admissions standards the defendant claimed deemed me unqualified and denied admissions to their law school program:

    a. That my high GPA was not considered in combination with my low LSAT score. Therefore, I was denied admissions based upon false defaming allegations about my undergraduate school Robert Morris University, who happens to be accredited by the same accrediting agency as the Defendant's law school, and accepted and recognized by the Department of Education.

    b. That my low LSAT score was another reason they denied me admissions even though the LSAT score is not an effective predictor of who can study law, nor does the ABA allow the Defendant or any law school admissions personnel to (1)

use the LSAT score as sole criteria for admissions; and (2) use cut-off scores to deem "qualified" students as being "unqualified," which especially affects and hinders minorities (especially ones who have been discriminated in the past) in gaining admissions. Additionally, the Defendant and other law schools can admit students with LSAT scores even as low as 10, as the ABA does not state that a high LSAT score is required for admissions to the Defendant's law school. Nor does the Defendant state the lowest LSAT score that would prevent a prospective student from gaining admissions to their law school (because they cannot use cut-off scores).

For this reason, I believe I was discriminated against because these bias admissions standards were used to wrongfully deny me, an otherwise "qualified" person for admissions to the defendant's law school because I am an African American.

## I claim gender discrimination because:

1. Because I am an African American Women who was wrongfully denied admissions to the defendant's law school because I am an African American woman, who was otherwise "qualified" for admissions.

2. Because my undergraduate school Robert Morris University is one of the biggest supporter's of African American Women.

3. The defendant's acclaimed diversification standards that is supposedly use to diversify their pool of candidates they admit to their J.D. program happens to present an unfair and unequal representation in the area of African American women admitted and attending their law school. And, as a result, the already small percentile of African American women attending the defendant's J.D. program is declining at a rapid rate, as a result of African American women not having an equal or fair representation of African Americans admitted to the defendant's J.D. program in the admissions process for bias reasons that have nothing to do with getting a legal education.

4. For not admitting me under the "rolling or scaling basis" program, which allows the defendant to choose around 30 prospective students who "may" fall short in the admissions requirements, and they offer them an opportunity to attend a summer course to prove they can make it in law school. And, if the candidates do well in the summer course, then they are guaranteed a seat in that law school for the upcoming entering class for that year. Now tell me why I was not chosen for this program even though I asked for the program by name. And, tell me why I was not chosen as a candidate for this program by the defendant, knowing that the percentage of African American women attending their law school is very low.

Therefore, your honor, these are the reasons why I feel I was wrongfully denied admissions and discriminated by the defendant, due to my physical disability, race and gender. As a result of being denied admissions I suffered immensely. I was forced to pursue another educational area that was not my choice, placed in jeopardy of defaulting on student loans and losing the only hope and support I had in trying to better myself as a permanently physically disabled individual. Additionally, trying to pursue the defendant for what I believe was an injustice involving discrimination, had caused my physical health to deteriorate as a result of emotional stress from: trying to repeatedly gain admissions, trying to get the proper advice and support from the defendant to ensure that I was accommodated, being denied more than once in the admissions process, and the steps I had to take to pursue them in filing a civil case against them.

Furthermore, your honor, my initial complaint filed to the Department of Education surrounding my initial allegations that I was discriminated by the defendant in the admissions process (based upon: disability, race, gender, and age) became evident when the OCR investigators presented me with direct statements from the defendant that were biased reasons for denying me admissions, and had nothing to do with admissions standards that were reasonable, nor associated with the admissions standards set forth by the American Bar Association.

The defendant's (2010) statement, "Plaintiff has also run afoul of the statute of limitations" (Def. Motion, p. 3). The defendant is mistaken because a four year statute of limitations applies (see discussion below). As for the other statutes, they are timely as my complaint was filed within two years of my learning of the reasons for rejection to its law school.

Additionally, the defendant (2010) stated, "Plaintiff also admitted in 13(e) and (d) that her LSAT score was low and she failed to meet the "requirements for admission" (Def. Motion,

p. 3). In regards to the defendant's statement above, this is totally false, and it does not state what the defendant claimed I stated, and where they claimed these false statements were found. I never stated that I failed to meet the requirements for admission. I gave an additional statement [like the defendants state in their application instructions] describing two areas (LSAT score, and my work history) that were impacted or affected as a result of becoming permanently physically disabled. This was to inform the Committee about extenuating circumstances (hardship) that interfered with these areas due to being associated with becoming or being permanently physically disabled. Also, the defendants (2010) state on their website under "application requirements (http://ask.kentlaw.edu/index.jsp):

> There is no required minimum LSAT score or undergraduate GPA in order to apply for admission. However, admission to the law school is highly competitive, with many more applicants than seats in the entering class. Students are admitted to the law school based on the information contained in their applications, their LSAT scores, and their undergraduate records. Although the GPA and LSAT are important criteria, other qualitative factors are considered. Particular emphasis is given to the nature and rigor of the undergraduate curriculum, writing ability, the personal statement, and letters of recommendation, particularly those from academic sources.

Therefore, how does a "low LSAT score cause me to "fail to meet the requirements for admissions, like the defendant claims (Def. Motion, p. 3).

Furthermore, when the defendant (2010) stated, "Perhaps the most egregious of plaintiff's admissions: she complains the defendant "applied normal admissions standards in reviewing the plaintiff application" (Def. Motion, p. 3). In response to this statement, I responded to what the OCR investigator (2008) stated, "That the defendant "applied "usual" admissions standards because they were not aware that I was disabled (which was false, they knew). However, after submitting an appeal to OCR, along with proof, OCR changed their initial ruling, and stated that the defendant was aware. This statement that the defendant applied "normal" admissions standards was OCR's initial justification for why the defendant failed to

take these areas in consideration. Therefore, I was wrongfully denied admissions, despite being a "qualified" person for admissions to the defendant's school.

The standards that the ABA gives the defendant is to administer admissions standards that are ethical, not admissions standards that excludes individuals from protected classes from their right to gain admissions to receive a legal education, because the defendant wants to administer "bias" admissions standards that discriminates, prevents, hinders, or deems a "qualified" person from any protected class, as being "unqualified," and denies them their right to an "equal" opportunity, is wrong.

In addition, the defendant (2010) stated, "these pleading admissions are fatal to her claim given that a private academic institution is not required to lower admissions standards to accept any applicant and great deference is afforded these decisions" (Def. Motion, p. 4). In response to the defendant's statement above, the defendant is a recipient of federal funding. And, according to the rules and regulations for recipients of federal funding, under Title IX (sex discrimination) and Title VI prohibits recipients of Federal financial assistance from discrimination on the basis of disability, race, or gender in educational programs or activities. Specifically, Section 601 of Title VI of the Civil Rights Act of 1964, 78 Stat. 252, 42 U.S.C. § 2000d, states:

> "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

As a little background information, I had submitted an appeal letter to the Department of Education in Washington, who overturned their original claim that favored the law school, but failed to overturn their decision to favor me after proof was submitted to prove I was correct in

my original claim to the investigators at the Department of Education. However, I still have not received correspondence from the third appeal that I submitted to the Department of Education.

To the best of my knowledge, the laws states that I have two years after receiving correspondence from the Department of Education, in which I have not; therefore, the complaint I filed is not past the statute of limitations. Furthermore, during the Department of Education's investigation, I learned, in a letter dated October 8, 2008, of the reasons for my denial of admission. I believe those reasons to be discriminatory and form the basis of this complaint. Because I did not learn of those discriminatory reasons until October of 2008, my March 2010 easily falls within the two year statute of limitations. Romeo v. Allstate Corp 404 F.3d 212, 221 (3d Cir 2005). Ordinarily a statute of limitation begins to run from the moment the potential plaintiff has a complete and present cause of action. Federal discovery rule which dictates that a federal cause of action accrues "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim. Romero, 404 F.3d at 222 (internal question and citation omitted).

For section 504, the law under the federal Discovery Rule: see Podobnik v. U.S. Postal Serv., 409 F.3d 584, 509 (3d Cir. 2005). Because the plaintiff was not injured before the Department of Education's findings from the fact finding investigation, which stipulated the defendant's statements about the plaintiff in which the plaintiff believed to be discriminating, the discovery rule would not have rendered the plaintiffs claims untimely.

The discovery rule delays the initial running of the statute of limitations, but only until the plaintiff has discovered: (1) that he or she has been injured; and (2) that this injury has been caused by another party's conduct. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380,

1386 (3d Cir. 1994) the discovery rule "postpones the beginning of the limitations period from the date a plaintiff was wronged until the date a plaintiff discovers that he or she was injured.

Defendant claims that 42 U.S. 1981 requires a two year statute of limitation; however, a four year statute of limitations applies under Jones v. R. R. Donnelly Sons Co. (02-1205) 541 U.S. 369 (2004) 305 F.3d 717, which states, "after this court held that federal courts should apply the most appropriate state statute of limitations, see Goodman v. Lukens Steel Co., 482 U.S. 656, 660, Congress enacted a four year statute of limitations for causes of action "arising under an Act of Congress enacted after [December 1, 1990], "28 U.S.C. 1658(a), Petitioners, African-American former employees of respondent, filed a class of action alleging violations of 1981, as amended by the Civil Rights Act of 1991. Respondent sought summary judgment, claiming that the applicable state two year statute of limitations barred their claims, but the District Court held that petitioners' wrongful discharge, refusal to transfer, and hostile work environment claims arose under the 1991 Act and therefore are governed by 1658. The Seventh Circuit reversed, concluding that 1658 does not apply to a cause of action based on a post-1990 amendment to a pre-existing statute. *Held:* Petitioners' causes of action are governed by 1658. As stated by the 1658 enactment:

> That purpose would not be served if 1658 were interpreted to reach only entirely new sections of Congress" than a new, stand-alone statue. What matters is the new rights of action and corresponding liabilities created by the enactment. Thus, a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990-and therefore is governed by 1658's 4-year statute of limitations-if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.

Because the Donnelly case allows for a four year statute of limitation, plaintiff's 42 U.S.C. 1981 claim is timely.

Because Section 504 and Title of ADA are very similar they should be treated the same for purposes of the statute of limitations.

In Gaona v. Town & Country Credit, 324 F.3rd 1050, loss (8th Cir. 2003), it states:

> we have held that Congress intended Title II of the ADA to be interpreted consistently with the Rehabilitation Act, Pottgen v. Mo. St. High Sch. Activities 40 F. 3d 926, 930 (8th cir 1994) and other circuits have applied the same limitation periods for claims under Title II of the ADA and the Rehabilitation Act. See, e.g., Everett, 138 F.3d at 1409-10. Doe v. County of Cente, 242 F.3d 437, 446 (3d Cir. 2001); See also McDonald v. Commw. Of PA., 62 F.3d 92, 95 (3d Cir. 1995) whether suit is filed under the Rehabilitation Act or ADA, the substantive standards for determining liability is the same.

Accordingly, Section 504 should have the same two year statute of limitations as Title II, making plaintiff's complaint timely.

Because plaintiff did not discover the reasons for her denial of admission to defendant's school until she received the October 2008 letter from the OCR investigator at the Department of Education, plaintiff's claims are timely and fall within the statute of limitations. Furthermore, 42 U.S.C. has a four year statute of limitations which also makes plaintiff's complaint timely.

I voluntarily dismiss my age claim and so will not respond to defendant's argument regarding that.

If this Court believes that the claims would be clearer were I to amend my complaint, then I ask for leave to do so.

WHEREFORE, for the reasons stated above, Plaintiff, MESUE JACKSON, prays that the Honorable Judge will deny the defendant's Motion to Dismiss with prejudice the original complaint I filed against the defendant.

Sincerely,

*[signature: Mesue Jackson]*

Mesue Jackson

Mesue Jackson, *pro se*
168 Heritage Lane
Streamwood, IL 60107
Phone: 847-893-6565
Email: jacksonmesue@yahoo.com